UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

VINCENZO RANDAZZO,

Defendant.
-----------------------------------------------------x

**MEMORANDUM & ORDER**
26-CR-074 (CBA)

**AMON, United States District Judge:**

The Defendant moved at Docket Entry # 46 to suppress his post-arrest statements and to exclude GX 1 and GX 1-T from evidence. Defendant argues that all his post-arrest statements were obtained in violation of the Fifth Amendment. Included in that submission were the FBI's 302 report (Exhibit A); the entire post-arrest video of Defendant in the precinct interview room (Exhibit B); a video excerpt of the interview (Exhibit C); and the transcript of that interview (Exhibit D). Exhibits C and D are the Government's Exhibit 1 (GX 1) and Exhibit 1-T (GX 1-T), respectively. Defendant did not submit a supporting affidavit and did not request a hearing on the motion. (D.E. # 46 at 3 n.2.) The Government filed its Opposition at Docket Entry # 47. Defendant filed a reply at Docket Entry # 49.

For the following reasons, Defendant's Motion to Suppress is **DENIED**.

## I. The motion is untimely.

To begin, the motion is untimely. On July 20, I ordered orally and on the docket that pre-trial motions were due by August 5. (D.E. # 30.) Defendant filed this motion on September 16, 42 days after that deadline. (D.E. # 46.)

Federal Rule of Criminal Procedure 12(b)(3) provides that motions regarding the suppression of evidence "must be raised by pretrial motion if the basis for the motion is then

reasonably available and the motion can be determined without a trial on the merits." "If a motion falling within Rule 12(b)(3) is not made . . . before such pretrial deadline as may be set by the court," it is "untimely." United States v. O'Brien, 926 F.3d 57, 83 (2d Cir. 2019) (quoting Fed. R. Crim. P. 12(c)(3)). The Court may nonetheless entertain an untimely pretrial motion "if the movant shows 'good cause' for his failure to make it prior to the deadline." Id. "Good cause" will not be found "where 'the facts [underlying the challenge] were notorious and available to petitioners in the exercise of due diligence'" before the court-ordered deadline. See id. (quoting Shotwell Mfg. Co. v. United States, 371 U.S. 341, 363 (1963)) (declining to hear untimely post-trial motions).

As described, Defendant brings this motion 42 days after the August 5 deadline and less than one week before trial, after missing multiple in-court opportunities to provide notice to the Government and to the Court of the potential challenge. Defendant did not seek leave to file an untimely motion or attempt to demonstrate that any "good cause" for leave exist, and Defendant's reply brief makes no effort to defend the motion's timeliness. Nor could it. The Government produced the recording and transcription of Defendant's post-arrest interrogation more than five months ago, and nearly four months before the August 5 motions deadline. In every sense, the relevant facts have long been "notorious and available" to the Defense. The Government rightly cites a string of cases in which courts have denied untimely motions on similar grounds. See, e.g., United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) (affirming denial of motion filed thirty-nine days late where "counsel offer[ed] no reason" for failure to discuss and file late); United States v. Robinson, 357 F. Supp. 3d 221, 224 (E.D.N.Y. 2019) (denying untimely motion to suppress where defendant "kn[ew] of the basis for his motion before the deadline expired"); see also United States v. Gatling, No. 20-cr-196, 2022 WL 42759, at *2 (D. Conn. Jan. 5, 2022) (denying new counsel leave to file untimely pre-trial motions that prior counsel had chosen not to file); United

States v. Martin, No. 21-cr-68, 2023 WL 1767161, at *1 (D. Vt. Feb. 3, 2023) (denying late 12(c)(3) motion to dismiss whose basis had been known to defendant for six months).

## II. Defendant fails to show on the merits that his statements were not voluntary.

Even if I were to reach the merits, I would deny the motion to suppress.

The "police may use a defendant's confession without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice." United States v. Anderson, 929 F.2d 96, 98 (2d Cir. 1991). A confession is not voluntary "when obtained under circumstances that overbear the defendant's will at the time it is given." Id. (citing Lynumn v. Illinois, 372 U.S. 528, 534 (1963)). In determining whether a confession was voluntary, I consider "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." United States v. Haak, 884 F.3d 400, 409 (2d Cir. 2018). "The government bears the burden of demonstrating that the defendant's statements were voluntary." United States v. Siddiqui, 699 F.3d 690, 707 (2d Cir. 2012).

Defendant does not argue that he was not read or did not properly waive his Miranda rights. Rather, he argues that the statements quoted above, made after law enforcement read him his Miranda warnings, amounted to unconstitutional coercion rendering his statements involuntary.

I am not persuaded: these three factors, taken individually and together, do not suggest Defendant's statements were involuntary and therefore do not support suppression. First, Defendant overstates the extent to which his personal characteristics support a finding of involuntariness. His own principal case on this point, United States v. Rodriguez, undercuts his argument. There, the Court found that this factor weighed neutrally even where there was "no evidence that [the defendant] had previously received Miranda warnings," and where the defendant "expressed confusion" before waiving his rights. United States v. Rodriguez, No. 18-cr-444

(NGG), 2019 WL 112621, at *7 (E.D.N.Y. Jan. 4, 2019). There, the defendant's expression of confusion was unambiguous: he told officers, on the record, "I'm so confused." Id. at *2. Yet the Court still found that this factor "[did] not cut in favor of" a finding of voluntariness. Id. at *2.

The same conclusion is warranted here. Defendant's response to the agents' post-Miranda warnings—"I guess. I don't know"—is, at best, more ambiguous than the insufficient expression of confusion in Rodriguez. Moreover, the response came during the exchange about cooperation—not when officers asked Defendant whether he understood his Miranda rights. To that question, Defendant answered an unambiguous "Yes." Though he is not a native English speaker, Defendant spoke extensively and understandably in English to the officers throughout the interview. In our most recent pre-trial conference, where Defendant's interpreter was only available virtually and Defendant did not use her services,, Defendant assured me that he had a good understanding of English and of the proceedings occurring before him. Language limitations—especially mild ones, as here—"do[] not necessarily bar a finding of a knowing and voluntary waiver." United States v. Richardson, No. 09-cr-864 (JFB), 2010 WL 5437206, at *4 (E.D.N.Y. Dec. 23, 2010); see also, e.g., Campaneria v. Reid, 891 F.2d 1014, 1020 (2d Cir. 1989) ([Defendant's] native tongue is Spanish. Nonetheless . . . his command of English was sufficient for him to have understood the Miranda warnings given to him."). And despite his relative lack of experience with the criminal justice system, Anderson, 929 F.2d at 99, there is no indication that Defendant believed falsely that the interrogation was his last chance to cooperate. Defendant's engagement throughout the interrogation, including by frequently denying or qualifying the officers' statements to him, provide no basis to believe that confusion or misunderstanding in any way affected his decision to talk. Like the court in Rodriguez, I find that this factor does not support a finding of involuntariness. Rodriguez, WL 112621, at *7.

The second factor, conditions of interrogation, also fails to support a finding of involuntariness. Although "length of detention" is indeed relevant to this assessment, United Siddiqui, 699 F.3d at 702, and Defendant was in custody and handcuffed prior to his interrogation, those conditions alone do not demonstrate that Defendant's statements were involuntary. There is nothing necessarily improper about the length of Defendant's 28-minute interrogation or roughly 3-hour detention: courts have routinely found that much longer periods of detention and interrogation did not render confessions involuntary. See, e.g., Parham v. Griffin, 86 F. Supp. 3d 161, 172-73 (E.D.N.Y. 2015) ("The fact that Petitioner was in custody for six and a half hours does not by itself indicate coercion."); see also U.S. v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988) (five-hour detention does not render consent to search involuntary).

"[T]he totality of the circumstances" surrounding the interrogation clearly weigh against a finding of coercion. See Parham, 86 F. Supp. 3d at 172. The video recording of Defendant's interrogation shows an altogether "cordial" and "professional" conversation. See United States v. Shehadeh, 940 F. Supp. 2d 66, 73 (E.D.N.Y. 2012). In almost every respect, the circumstances mirrored those in United States v. Haak, where the Second Circuit reversed the lower court's suppression of the defendant's statements. 940 F. Supp. 2d at 402. Like the defendant in Haak, Defendant spoke with officers in a "standard interview room" for half an hour. Id. at 415. His handcuffs were removed throughout the interview. See id. The officers, dressed in plain clothes, did not raise their voices, speak over Defendant or each other, or otherwise act anything less than polite; the interview was "conversational" and peppered throughout with "casual talk." Id. Defendant was provided breakfast, water, and coffee. The only meaningful distinction from Haak is that Defendant was, of course, in custody. But courts routinely find that an otherwise "cordial" interrogation does not become coercive simply because the defendant was under arrest. See, e.g.,

Shehadeh, 940 F. Supp. 2d at 73. In sum, the recording shows that Defendant was "well treated," and offers no indication of "the kind of intensive interrogation over many hours or days which would overwhelm the frightened prisoner and vitiate consent." See Arango-Correa, 851 F.2d at 57. I find that this factor clearly weighs against a finding of involuntariness.

The Defense leans heavily on the third factor, arguing that "agents misled" Defendant into believing that he had to choose between having an attorney present during questioning, or cooperating with law enforcement. Central to this argument is the following exchange:

> Det. Bonacarti: This is, this is your best opportunity to get in front of this now.
>
> S.A. Ford: This is like your, your one chance to tell us your side of the story. Why it's important is because after this, you're not going to speak with us without an attorney present. And it just, like, slows things down. But this is your one chance for you to tell us what happened, what's going on in your life. And the Judge sees this—they'll rule, right. When this is all done and Judge is going to look at what you did, and did you cooperate. Cooperation goes a long way in the federal system. Okay.
>
> Det. Bonacarti: This is your opportunity to take responsibility and show remorse so when we go forward and it doesn't look, you know, it looks a lot better to know what's going on. S.A. Ford: Okay. All makes sense?
>
> Randazzo: I guess. I don't know.

(D.E. # 46, Exhibit C (GX 1), at 1:14-2:00.) Defendant argues that this exchange "affirmative[ly] misrepresent[ed]" his legal in violation of United States v. Anderson and was therefore "sufficiently coercive" to have invalidated his Miranda waiver.

In Anderson, the Second Circuit affirmed suppression of post-Miranda statements made after the interrogating agent told the defendant "'this [is] the time to talk to us, because once you tell us you want an attorney we're not able to talk to you and as far as I [am] concerned, we probably would not go to the U.S. Attorney or anyone else to tell them how much [you] cooperated with us.'" Anderson, 929 F.2d at 97. "The 'if you want a lawyer you can't cooperate' language was repeated three times" before the defendant made incriminating statements. Id. The agent's

"false and/or misleading" statements, which indicated to the defendant "that if he asked for a lawyer it would permanently preclude him for cooperating with the police," rendered subsequent confessions involuntary, making suppression appropriate. Id. at 97-98. Courts following Anderson ask whether, under the totality of the circumstances, the government's conduct during post-arrest, custodial interrogation was "false [or] misleading." Shehadeh, 940 F. Supp. 2d at 75.

Two cases are particularly instructive. In United States v. Shehadeh, the defendant sought to suppress statements made after officers, "in the course of explaining the right of a suspect in custody to have an attorney with him during questioning," warned that defendant's "ability to 'speak plainly,' 'face-to-face' with his 'case agent' would be of limited duration and, critically, would evaporate when 'the lawyers [got] involved.'" 940 F. Supp. 2d at 73. This warning "took place during, not after, the advice of [Miranda] rights." Id. Although these remarks came "as close to the line demarcated by Anderson as possible," Judge Vitaliano ultimately denied suppression. Id. at 75. He observed that the Anderson officers crossed the line by "misrepresent[ing] the nature of the defendants' rights should he get a lawyer (i.e., 'get a lawyer and the possibility to cooperate will be a nullity')." Id. By contrast, the Shehadeh agents suggested truthfully "that the current, casual nature of [defendant's] interactions with the government would change in tenor" if and when he invoked his right to counsel." Id. Judge Vitaliano also observed that this representation "was a one-off comment," unlike "the repetition of the government's misrepresentative ultimatum" in Anderson. Id. at 75 n.7. Though the interrogation process left "much to be desired," it remained "a far cry from the explicit and repetitive advice in Anderson that asking for a lawyer would categorically foreclose cooperation." Id. at 75-76. The Second Circuit affirmed. United States v. Shehadeh, 586 Fed. App'x 47, 49 (2d Cir. 2014).

In Yoh v. Pallito, the defendant moved to suppress statements where officers advised him to confess immediately, before retaining a lawyer, because he was "not going to get another opportunity" and the officers were "not going to interview [him] after today." No. 9-cv-18, 2009 WL 5218070, at *15 (D. Vt. Dec. 30, 2009) (quotation marks omitted). The officers advised defendant that this was "the last time" and "the only chance you get with us." Yoh v. Pallito, No. 9-cv-18, D.E. # 7-23 at 31. Although a "close[] question," the court denied suppression again because the officers' statements did not expressly deceive or mislead the defendant as to his constitutional rights: they "never specifically told [defendant] that he would be worse off, or that cooperation would be precluded, if he retained counsel." Yoh, 2009 WL 5218070, at *15. "[U]nlike in Anderson . . . there was no benefit [defendant] would have received, or some penalty he would have avoided, but for his decision to exercise a constitutional right." Id.

The case before us is also close, and the officers' tactics approach "the line demarcated by Anderson." Shehadeh, 940 F. Supp. 2d at 75. But for similar reasons to those given in Shehadeh and Yoh, this case is distinguishable from Anderson. Obviously, suggesting that the post-arrest interview may be the defendant's last chance to cooperate and linking that to counsel is better left out of the FBI's post-arrest playbook, but the statements made by Detective Bonacarti and Special Agent Ford were more equivocal and less egregious than that condemned in Anderson. In Anderson, the agent told the defendant three times that if he wanted a lawyer, he would not be able to cooperate. 929 F.2d at 97. Here, the agents told Defendant that it was his one chance to tell them his side of the story because "after this, you're not going to speak to us without an attorney present." Ex. D at 2. Although it was not Defendant's only chance to tell his side of the story, it was correct that an attorney would have to be present for the agents to speak with Defendant in the future. Unlike in Anderson, there was no clear statement or "affirmative representation"

instructing Defendant that if he asked for an attorney, he could never again cooperate. Instead, like the officers in Shehadeh and Yoh, Bonacarti and Ford made accurate representations about the sequence of events ahead and the practical consequences of cooperation. They never insinuated that "ask[ing] for a lawyer . . . would permanently preclude [Defendant] from cooperating with the police." See Anderson, 929 F.2d at 98 (emphasis added).

Moreover, although it is the government's burden to show that a statement is voluntary, the defendant's motion was not accompanied by an affidavit from the defendant indicating that this statement about cooperation in any way "overb[ore his] will" or caused him to speak to the agents. See Anderson, 929 F.2d at 99. Indeed, Defendant did not confess to the details of the robbery immediately after being told about cooperation. He initially continued to deny being involved. It was not until after he was shown clear photographic evidence of his participation in the bank robbery that he admitted his involvement.

Accordingly, I conclude the defendant's statements were not obtained under circumstances that so "overb[ore his] will" as to render any confession involuntary. See Anderson, 929 F.2d at 99. It is therefore ordered that Defendant's Motion to Suppress, Docket Entry # 27, is **DENIED**.

SO ORDERED.

Dated: September 22, 2026
Brooklyn, New York

/s/ Carol Bagley Amon

Carol Bagley Amon
United States District Judge